UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| YVES MICHEL FOTSO, | 6:12-cv-1415-TC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| REPUBLIC OF CAMEROON, PAUL BIYA, PASCAL MAGNAGUEMABE, JUSTICE SOH, JEAN BAPTISTE BOKAM, COLONEL AMADOU, and INNOCENT BMOUEM, | |
| Defendants. | |

COFFIN, Magistrate Judge:

Plaintiff's complaint alleges compensatory and punitive damages for torture by a public official, false imprisonment and breach of contract pursuant to 28 United States Code sections 1331 and 1350. Plaintiff Yves Michel Fotso is an incarcerated Cameroonian in the custody of the Republic of Cameroon. One of the named defendants is Paul Biya, President of Cameroon.

On or about December 1, 2010, plaintiff was imprisoned pursuant to criminal actions initiated against him by the state of Cameroon for allegedly fraudulently keeping $31 million

associated with a transaction he undertook to purchase aircraft on behalf of the government. Plaintiff was the General Manager-Administrator for Cameroon Airlines and the government's point of contact. The company that was supposed to supply the aircraft, GIA International, Incorporated, went bankrupt in 2004, after the transfer of the $31 million. Cameroon filed adversary proceedings pursuant to the bankruptcy and in 2006, entered into a Settlement Agreement and Mutual Release with the bankruptcy Trustee. The Settlement Agreement and Mutual Release also released Cameroon Airlines and its agents and employees. Criminal proceedings against plaintiff commenced on December 1, 2010.

Between December 1, 2010 and May 25, 2012, plaintiff was imprisoned in Yaounde Central Prison-Kondengui. Plaintiff alleges that while imprisoned there, he was housed in a small windowless cell without light or fresh air for over 12 hours each day. On May 25, 2012, plaintiff was transferred to the Gendarmerie Lock-up run by the Secretaire d'Etat a la Defense in charge of the National Gendarmerie. During the transfer, plaintiff alleges he was beaten, kicked, shocked with electricity, and subjected to torture by hooded soldiers. Plaintiff alleges his time at the Gendarmerie Lock-up, where he is still being held, has been marked by prohibitions on writing and reading material, radio and television. He claims his visits from family members have been unreasonably controlled and that his access to counsel has been infrequent and monitored.

Currently before me is the government's suggestion of immunity from suit as to President Paul Biya. (#31). For the reasons discussed below, I find that Defendant President Paul Biya is immune from suit in this action and recommend that this court dismiss this action against him.

///

**Discussion**

It is well settled that the executive branch's suggestion of immunity is conclusive and not subject to judicial review. Ex Parte Republic of Peru, 318 U.S. 578, 589 (1943). "For over 160 years American Courts have consistently applied the doctrine of sovereign immunity when requested to do so by the executive branch" with no additional review of the executive's determination. Spacil v. Crowe, 489 F.2d 614, 617 (5th Cir.1974). "[A] determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff." Ye v. Zemin, 383 F.3d 620, 626-27 (7th Cir. 2004).[1] A court's deference to the Executive Branch's determination is motivated by caution "appropriate to the Judicial Branch when the conduct of foreign affairs is involved." Id. at 626 (citing Republic of Mexico v. Hoffman, 324 U.S. 30, 35(1945) ("[I]t is a guiding principle in determining whether a court should [recognize a suggestion of immunity] in such cases, that the courts should not so act as to embarrass the executive arm in its conduct of foreign affairs. In such cases the judicial department of this government follows the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction.") (internal citations omitted)).

In his December 6, 2012 letter to the Department of Justice, Harold Hongju Koh, Legal Advisor to the United States Department of State, sets forth the Executive Branch's recommendation for finding President Paul Biya immune from civil suit:

> "Under common law principles of immunity articulated by the executive branch in the exercise of its constitutional authority over foreign affairs and informed by

---

[1] "Head-of-state immunity is a doctrine of customary international law pursuant to which an incumbent head of state is immune from the jurisdiction of a foreign state's courts." Yousuf v. Samantar, 699 F.3d 763, 768-769 (2012) [internal quotations omitted].

Page 3 - FINDINGS AND RECOMMENDATION

customary international law, President Biya, as the sitting head of state of a foreign state, is immune from the jurisdiction of the United States District Court in this suit while in office . . . . This letter recognizes the particular importance attached by the United States to obtaining the prompt dismissal of the proceedings against President Biya in view of the significant foreign policy implications of such an action."

(#31, Exh. 1)

Here, I recommend that this court apply the doctrine of sovereign immunity to President Biya as requested by the executive and dismiss plaintiff's claims against him.

## Conclusion

Pursuant to the finding above, I recommend that President Paul Biya be dismissed from this suit. As discussed at the January 28, 2013 status conference, the parties shall file briefing related to the immunity of other Cameroonian officials.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 25 day of January 2013.

_____
THOMAS M. COFFIN
United States Magistrate Judge