UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

YVES MICHEL FOTSO,                                              6:12-cv-1415-TC

                    Plaintiff,

          v.                                      FINDINGS AND RECOMMENDATION

REPUBLIC OF CAMEROON, PAUL BIYA,
PASCAL MAGNAGUEMABE, JUSTICE
SOH, JEAN BAPTISTE BOKAM, COLONEL
AMADOU, and INNOCENT MBOUEM,

                    Defendants.
_____

COFFIN, Magistrate Judge:

     Plaintiff, Yves Michael Fotso, brings this action under the Alien Tort Statute (ATS) and the

Foreign Sovereign Immunities Act (FSIA) asserting torture by public officials, false imprisonment,

and breach of contract. Defendant Paul Biya, President of Cameroon, has already been dismissed

by virtue of the United States informing the court of his immunity. The remaining defendants now

seek dismissal.

ALLEGATIONS

Plaintiff alleges as follows:

Plaintiff Fotso is a Cameroonian who is currently in the custody of the Republic of Cameroon incarcerated at the Gendarmerie lock-up in the Secretariat d'Etat a la defense in the charge of the Gendarmerie.

In 2001, Cameroon sought to purchase a BBJ-2 aircraft for Defendant Biya and to lease a B767-231 and B747-300. Cameroonian officials contacted Cameroon Airlines to arrange the transactions. At the time, plaintiff was the general manager-administrator for the airlines and acted as Cameroon's point of contact.

Plaintiff negotiated the purchase and leases with GIA International, Inc. Cameroon's Minister of Finance paid cash directly to GIA, but in early 2004, GIA became insolvent.

GIA filed for Bankruptcy in the United States Bankruptcy Court in the District of Oregon and a trustee was assigned. Cameroon, among others, filed adversary proceedings in the case. In August of 2006, the trustee negotiated a settlement agreement and mutual release with the parties including Cameroon and Indian Airlines. Pursuant to the release, no party could assert against any other party or person being released any claim or initiate any action. The agreement also released Cameroon Airlines and its agents and employees.

On December 1, 2010, Cameroon initiated a criminal action against plaintiff alleging he and others fraudulently kept the $31,000,000 paid to GIA. Pursuant to the criminal action, plaintiff was imprisoned at the Yaunde Central Prison-Kondengui between December 1, 2010, and May 25, 2012, by order of defendant Magistrate Judge Pascal Magnaguemabe.

While imprisoned at the Yaunde prison, plaintiff was housed in a small windowless cell without access to light or fresh air for more than 12 hours each day. On May 25, 2012, plaintiff was transferred to the Gendarmerie lock-up run by defendant Jean Baptiste Bokam, the Secretary of State for the Defense in charge of National Gendarmerie. During the transfer, plaintiff was beaten, kicked, shocked, and otherwise subject to physical and emotional torture by hooded soldiers. Defendant Innocent Mbouem, Lieutenant in the National Gendarmerie Brigade, participated in the attacks.

Between December 1, 2010, and the present, plaintiff has not been allowed to write his family with only infrequent unreasonably controlled visits. The prison guards have denied plaintiff access to reading materials and only provided him with books after he threatened a hunger strike. Until recently, plaintiff has been denied access to radio and television. In addition, plaintiff was given infrequent monitored access to counsel with no confidential communications.

Plaintiff alleges he was intentionally and maliciously tortured by public officials under the control of the President such as defendant Mbouem and others causing him permanent injury. Moreover, defendants either participated in the torture or allowed it.

Plaintiff alleges that defendant Cameroon intended to confine him without trial despite the agreement not to bring any action against Cameroon Airlines and its agents. The confinement has also caused plaintiff permanent injury.

For his final claim, plaintiff alleges that Cameroon has violated the agreement/release it entered into following the GIA bankruptcy by initiating the criminal proceedings against him and that breach has caused damage.

Page 3 - FINDINGS AND RECOMMENDATION

DISCUSSION

Although this is a motion to dismiss, there are materials outside of the complaint that the court must consider in determining subject matter jurisdiction. Plaintiff asserts jurisdiction based on the Alien Tort Statute (ATS), 28 U.S.C. 1350, and the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605. As will be discussed below, the ATS is inapplicable to this case even based on the four corners of the complaint. And, the "sole basis" for United States federal courts to obtain jurisdiction over a foreign state is the FSIA. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989). The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." Republic of Arg. v. Weltover, Inc., 504 U.S. 607 (1992). Under section 1604 of the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided" in various exceptions.

Plaintiff has the preliminary burden of establishing that Cameroon is not entitled to immunity. See Meadows v. Dominican Republic, 817 F.2d 517, 522 (9th Cir. 1987). The complaint merely lists section 1605 as the basis for jurisdiction without reference to the particular exception invoked. However, the briefing and oral argument make clear that plaintiff is relying on the commercial activity exception noted at 28 U.S.C. § 1605(a)(2):

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> (2) in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United

States[.]

Under the burden-shifting framework of the FSIA, defendant Cameroon must establish a prima facie case "that it is a sovereign state and that plaintiff's claims arise out of a public act." Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 708, n. 9 (quoting Meadows, 817 F.2d at 523) (internal quotation marks omitted). A presumption then arises "that the foreign state is protected by immunity." Id. If plaintiff has met the threshold of alleging that the defendant is not entitled to immunity due to one of the FSIA exceptions, see Meadows, 817 F.2d at 522, the defendant may make either a facial or factual challenge to the district court's subject matter jurisdiction, see Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (differentiating between facial attacks and fact-based challenges to subject matter jurisdiction).

Defendant Cameroon generally makes a factual attack on subject matter jurisdiction, and thus may introduce testimony, affidavits, or other evidence to "dispute[ ] the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. Under these circumstances, "no presumptive truthfulness attaches to plaintiff's allegations." Holy See, 557 F.3d at 1073 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)) (internal quotation marks omitted). "The plaintiff then has the burden of going forward with the evidence by offering proof that one of the FSIA exemptions applies." Siderman, 965 F.2d at 708 n. 9 (quoting Meadows, 817 F.2d at 522–23). If plaintiff presents such evidence, defendant bears the burden of proving by a preponderance of the evidence that the exception to sovereign immunity does not apply. Siderman, 965 F.2d at 708 n. 9 (quoting Meadows, 817 F.2d at 522–23). Even where the material facts are disputed, the court may still evaluate the merits of the jurisdictional claims. See

Holy See, 557 F.3d at 1073.

In this case, plaintiff has sought to invoke jurisdiction in federal court, and this district in particular, based on the settlement agreement in the GIA bankruptcy approved by Bankruptcy Judge Frank Alley. In essence, plaintiff asserts that Cameroon released him from any liability related to the GIA transaction.

Defendant, the Republic of Cameroon, filed a complaint asserting the imposition of an actual or constructive trust and equitable lien based on the $31,000,000 allegedly provided to GIA to procure the Boeing aircraft. In addition, Cameroon sought to elevate its claim against GIA over that of Indian Airlines requiring distribution to it before any distributions could be made to Indian Airlines from the GIA bankruptcy estate. Subsequently, All parties entered into a settlement agreement whereby the Republic of Cameroon received 52% of the net proceeds (approximately $858,163.27) of the bankruptcy estate and Indian Airlines received 48%. Settlement Agreement and Mutual Release (attached to the Declaration of Akere T. Muna (#40) as Exhibit A).

Allegedly important to plaintiff's defense in the later filed criminal action are the releases contained at paragraph's 11, 12 and 13 of the agreement and release. In paragraph 11, the Republic of Cameroon released Indian Airlines and the Trustee (who stood in the shoes of GIA) from any and all claims. In paragraph 12, Indian Airlines released Cameroon and Cameroon Airlines (including agents and employees) from any and all claims. And in paragraph 13, all parties to the settlement agreement, including the Republic of Cameroon, agreed not to initiate any action against any of the parties being released (which included Cameroon Airlines and its employees released by Indian Airlines) based upon any claim which are the subject of the release. Accordingly, plaintiff argues

Page 6 - FINDINGS AND RECOMMENDATION

that the Republic of Cameroon agreed not to prosecute plaintiff, general manager-administrator for Cameroon Airlines, for the losses associated with GIA's failure to procure the aircraft or hold the money paid by the Republic of Cameroon in trust.[1]  Nonetheless, that is only a possible defense to the criminal proceedings occurring exclusively within the borders of the Republic of Cameroon and, thus, only tangentially related to this district, which as discussed below, leaves this court without jurisdiction to entertain this action.

Plaintiff argues he is a third party beneficiary to the settlement agreement and since Cameroon has been awarded compensatory damages of $29,000,000 in the Cameroon criminal action related to the funds it sought in the bankruptcy, he contends he has asserted an action based on commercial activity carried on here in Oregon.  However, as noted above, plaintiff alleges Cameroon breached the release "when it initiated the criminal action" and even if the release could provide a defense to the criminal action, sovereign immunity would still bar the action as the direct effect of the purported breach is in Cameroon, not the United States.

The FSIA must be applied by this court in the action against the Republic of Cameroon.  See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 (1983) (the statute must be applied by the district courts in every action against a foreign nation).  As noted above, section 1604 of the FSIA provides that the Republic of Cameroon is immune from the jurisdiction of this court if plaintiff's claims arise out of a public act unless section 1605 provides an exception.  The

---

[1]Wrongdoing of a criminal nature could not be the subject of the bankruptcy proceedings and a criminal prosecution is an entirely different creature. Cf. Dranow v. U.S., 307 F.2d 545, 557 (8th Cir. 1962) (bankruptcy proceedings are in no sense punitive and a prior bankruptcy proceeding cannot be an estoppel by judgment to a criminal prosecution because the nature of the actions are entirely different).

Page 7 - FINDINGS AND RECOMMENDATION

commercial activity exclusion excepts commercial activity carried on in the United States or activity outside the United States if that activity "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

The gravamen of plaintiff's complaint establishes that all the activity forming the basis of each claim occurred in Cameroon and impacted plaintiff in Cameroon. Moreover, as noted above, the burden shifting analysis associated with the court's determination of this exception permits the court to weigh factual matters related to the exception. Defendants have submitted a letter from the Cameroon Minister of Justice, Lauren Esso (attached to Declaration of Mitchell R. Berger (#39) as Exhibit 1), and a memorandum from the Permanent Secretary of the Minister of Justice of the Republic of Cameroon, George Gwanmesia (attached to Berger Declaration as exhibit 2). Statements of foreign officials are accorded great weight in determining whether an entity is entitled to claim the protection of the FSIA. E.g., S & S Machinery Co. v. Masinexportimport, 706 F.2d 411, 415 (2d Cir. 1983).

Minister Esso asserts that the Minister of Justice is officially responsible for the oversight and conduct of criminal justice proceedings and that it was and is in this capacity that the Minister of Justice oversaw and continues to oversee the criminal proceedings involving plaintiff. Letter of Minister of Justice at p. 1. Minister Esso further states that all of plaintiff's allegations arise from the criminal justice proceedings. Id. Esso also notes that all activities involving the criminal proceedings were carried out entirely in Cameroon. Id. at p. 2.

Secretary Gwanmesia asserts that the Minister of Justice has responsibility for the police criminal investigation and subsequent pretrial detention, prosecution and post-conviction

incarceration of plaintiff.[2] Memorandum of the Permanent Secretary of the Ministry of Justice at p. 1 and p. 2. Secretary Gwanmesia also concludes that all of plaintiff's allegations arise from the criminal justice proceedings taking place entirely within the Republic of Cameroon. Id. In essence, the Cameroon court determined that plaintiff insisted on GIA's services as intermediary, that GIA only forwarded $2,000,000 of the $31,000,000 paid by Cameroon for the aircraft to Boeing, and that plaintiff misappropriated the $29,000,000. Id. at pp. 5-6. Secretary Gwanmesia also notes that plaintiff raised the release executed in the GIA bankruptcy as a defense, but that under Cameroon law, a civil release does not waive violations of criminal law. Id. at p. 6. Moreover, Gwanmesia details the roles of each defendant in this case and concludes that all activities of the government of Cameroon and the individual defendants related to the criminal justice proceedings carried out in furtherance of Cameroon laws and policies. Id. at pp. 6-8.

Plaintiff attempts to rebut the presumption of immunity via the commercial activity exception. However, plaintiff makes no effort to rebut the statements of the Cameroon Ministry of Justice officials other than to deny them, and indeed determines not to address the facts arguing they are irrelevant. Instead, plaintiff relies on the bankruptcy proceedings and the releases executed by the Republic of Cameroon. However, the releases merely provide the basis for plaintiff's defense to the criminal action, but all activities alleged to have caused harm occurred solely within the borders of Cameroon. Moreover, even the activities giving rise to the criminal allegations against plaintiff were allegedly committed by plaintiff solely within Cameroon.

---

[2]The trial against plaintiff commenced on July 24, 2012, and, on September 21, 2012, the Cameroon court found plaintiff guilty of misappropriation of $29,000,000 in government funds and sentenced plaintiff to 25 years incarceration and payment of compensatory damages. The conviction is currently on appeal.

Page 9 - FINDINGS AND RECOMMENDATION

With respect to plaintiff's first claim, he alleges torture by a public official exclusively in Cameroon. Plaintiff alleges false imprisonment by defendant Cameroon in Cameroon for his second claim. And although plaintiff alleges a breach of contract formed in the District of Oregon, he alleges the breach itself took place exclusively within the Republic of Cameroon when Cameroonian officials undertook the criminal action against him. The allegations all involve non-commercial sovereign functions related to a criminal investigation and prosecution. See Saudi Arabia v. Nelson, 507 U.S. 349, 361 (1993) (the intentional conduct of wrongful arrest, imprisonment and torture can not qualify as commercial activity regardless if there is an underlying commercial motive).

The alleged violations all took place within Cameroon with no direct impact on the United States.[3] For purposes of the FSIA, the court must focus on the particular conduct upon which the claims are based. Id. at 357. That alleged conduct had no direct effect on the United States. See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992) (an effect is direct if it follows as an immediate consequence of the defendant's activity). While plaintiff argues part of the effect of his criminal prosecution is violation of a contract entered into in the District of Oregon, the immediate consequence of which plaintiff complains--alleged injury from torture, confinement due to false imprisonment, and prosecution in violation of a contract--have no impact on or in the United States. Accordingly, plaintiff has failed to rebut the presumption of immunity and this court, therefore, lacks jurisdiction over the Republic of Cameroon. Defendant the Republic of Cameroon should be dismissed with prejudice.

---

[3] The only commercial activities, the purchase agreement through GIA and the litigation of bankruptcy issues related to that purchase, do not form the basis of plaintiff's claims, but only relate his defense to the criminal action asserted against him.

Page 10 - FINDINGS AND RECOMMENDATION

The individual defendants also seek immunity based on the common law of foreign official immunity.[4] The FSIA does not apply to the individual defendants and thus the court must rely on the common law. Samantar v. Yousuf, 560 U.S. 305, 130 S.Ct. 2278, 2289-93 (2010). Under the common law, courts employ a two-step procedure for determining immunity. Under this procedure, first, the diplomatic representative of the sovereign can request a "suggestion of immunity" from the State Department. Id. at 2284. If the request is granted, the district court surrenders its jurisdiction. Id. But in the absence of recognition of the immunity by the Department of State, then under the second step, a district court has the authority to decide for itself whether all the requisites for such immunity exist. Id. In this case, the State Department has thus far declined to determine the immunity of defendants Pascal Magnaguemabe, Justice Soh, Jaen Baptiste Bokam, Colonel Amadou, and Innocent Mbouem. See Suggestion of Immunity as to Paul Biya (#31) at p. 3, n. 4 (State Department has not, to date, addressed the applicable immunity as to any other Cameroonian government defendants in this case).

However, given the unrebutted assertions of the Cameroon Ministry of Justice officials that the individual defendants acted solely within their capacities as officials of the Republic of Cameroon, the court should dismiss the foreign officials due to the burden the continuing suit would have on the Republic. See Samantar, 130 S.Ct. at 2292 (emphasis added):

[W]hen a plaintiff names only a foreign official, it may be the case that the foreign

---

[4]The only claim asserted by plaintiff that touches upon the District of Oregon is the breach of contract claim and none of the individual defendants are alleged to have breached the contract as none were parties to the settlement related to the GIA bankruptcy. Accordingly, this court lacks personal jurisdiction over the individual defendants as they have no contact with this forum and therefore it would violate Due Process to hail them into this court. This is an independent basis to dismiss against the individual defendants apart from the immunity issue.

state itself, its political subdivision, or an agency or instrumentality is a required party, because that party has "an interest relating to the subject of the action" and "disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect the interest." Fed. Rule Civ. Proc. 19(a)(1)(B). If this is the case, and the entity is immune from suit under the FSIA, the district court may have to dismiss the suit, regardless of whether the official is immune or not under the common law. See Republic of Philippines v. Pimentel, 553 U.S. 851, 867, 128 S.Ct. 2180, 171 L.Ed.2d 131 (2008) ("[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, **dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign**"). **Or it may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest**. Cf. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity" (citation omitted)).

Therefore, the record before the court establishes that the individual defendants acted in their official capacities and are either immune just as the Republic is or that the action against them should be dismissed so as not to negate the immunity enjoyed by the Republic of Cameroon. Foreign officials do enjoy immunity for their official acts. See Matar v. Dichter, 500 F.Supp.2d 284, 287 (S.D.N.Y. 2007) (State Department opines that foreign officials enjoy immunity from suit for their official acts).

More importantly, however, because the FSIA does not apply to individual foreign officials, jurisdiction cannot be based on that statute. Plaintiff attempts to assert jurisdiction based the ATS, but the Supreme Court has recently ruled that the presumption against extraterritoriality applies to the ATS. See Kiobel v. Royal Dutch Petroleum Co., 133 S.Ct. 1659, 1669 (2013). Accordingly, plaintiff concedes his claims against the individual defendants.

The court should grant the motion to dismiss as to all defendants and dismiss this action with

prejudice.

CONCLUSION

Pursuant to the findings above, I recommend defendants' motion to dismiss (#37) be granted

and this action should be dismissed with prejudice.

The above Findings and Recommendation will be referred to a United States District Judge

for review. Objections, if any, are due no later than fourteen days after the date this recommendation

is filed. The parties are advised that the failure to file objections within the specified time may waive

the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no

objections are filed, review of the Findings and Recommendation will go under advisement on that

date. If objections are filed, any party may file a response within fourteen days after the date the

objections are filed. Review of the Findings and Recommendation will go under advisement when

the response is due or filed, whichever date is earlier.

DATED this **16** day of May 2013.

_____
THOMAS M. COFFIN
United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION